UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
The Honorable Mary K. Dimke

| | |
|---|---|
| United States of America, | No. 4:22-cr-6007-MKD-1 |
| Plaintiff, | **Sentencing Memorandum** |
| v. | **Sentencing** |
| Bret Michael Emineth, | **January 4, 2024, 2:00 p.m.** |
| Defendant. | **Richland, Washington** |

Bret Michael Emineth has pled guilty to an unquestionably serious crime. This offense has forever altered him, the victim (P.E.), and their family. In addition to the serious sentence he faces in this case under his plea agreement, Mr. Emineth has agreed to separately plead guilty in state court to additional crimes which will subject him to an indeterminate sentence of potentially life imprisonment.[1] These anticipated sentences are significant, even more so for a 41-year-old with no prior criminal history. Mr. Emineth will not be released until he is more than 60 years old, and only once the state indeterminate sentence review board deems his release appropriate.[2] For these and other reasons, 20 years' imprisonment and life supervised release is sufficient.

---

[1] Per the terms of the plea, the state prosecutor will recommend no more than 360 months' imprisonment in the state case. *See* ECF 79 at p. 5. However, unlike its effect on this Court, the plea agreement does not bind the state court and thus that court could impose a life sentence as the maximum. Moreover, the state prosecutor could recommend those 360 months as the minimum term of the indeterminate sentence and likely would not be in violation of the plea agreement.
[2] *See* R.C.W. 9.95.420.

Sentencing Memorandum: 1

## Factual and Procedural History

In June 2021, the victim in this case (P.E. or Minor 1) reported that Mr. Emineth was sexually abusing her and had been for several years. Mr. Emineth was arrested the same day. His girlfriend, co-defendant Malesa Hale, was arrested the following day. Both were originally prosecuted in Benton County Superior Court. The United States obtained an indictment against both in February 2022. Though their state charges remain pending, Mr. Emineth and Ms. Hale were transferred into federal custody[3] and they appeared for arraignment on March 1, 2022.[4]

Mr. Emineth has agreed to a lengthy and thorough statement of facts in his plea agreement detailing the investigation into his offense.[5] As it pertains to his federal charges, Mr. Emineth conspired to produce and in fact produced child pornography documenting his abuse of P.E., which he sent to Ms. Hale at her request and urging.

After extensive negotiations with the United States and Benton County, Mr. Emineth pled guilty pursuant to a written plea agreement in June 2023. This written agreement resolves both his federal charges and his state charges. Here, Mr. Emineth

---

[3] They were initially brought into federal custody pursuant to a writ of habeas corpus ad prosequendum. *See* ECF 19. The state thus retained primary custody. However, Benton County Superior Court subsequently issued an order releasing them on personal recognizance. This effectively transferred Mr. Hale and Ms. Emineth into primary federal custody. When their federal cases are concluded, the expectation is that Benton County will file necessary paperwork to obtain a writ to bring them back into state custody to resolve their pending charges in that court.
[4] *See* ECF 35.
[5] *See* ECF 79 at pp. 9-23.

Sentencing Memorandum: 2

has pled guilty to Conspiracy to Produce Child Pornography and Production of Child Pornography. He has also agreed to plea guilty to four crimes in Benton County.[6] Following one continuance, this case is set for sentencing on January 4, 2024. As noted, after his federal sentencing, Mr. Emineth is expected to temporarily back into custody in Benton County pursuant to a writ so that he may plead guilty and be sentenced in state court. It is anticipated he will serve the bulk of his sentences in federal prison.

**Advisory U.S.S.G. Guideline Range, Rule 11(c)(1)(C) Plea Agreement**

The presentence investigation report (PSR) calculates an advisory guideline range of 360-720 months, based on a total offense level of 42 and criminal history category of I.[7] The guideline range is capped at 720 months as opposed to life because that is the maximum sentence this Court can impose if it sentences him to the statutory maximum on each count, consecutive to one another.

Pursuant to Mr. Emineth's plea agreement, entered under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties have agreed the appropriate sentence is between 240-360 months (20-30 years).[8] Should this Court accept the plea agreement, it must impose a sentence within that agreed-upon range. If the Court is inclined to impose a sentence outside of that range, the United States and Mr. Emineth have mutual options to withdraw from the plea agreement.[9]

---

[6] *See* ECF 79 at pp. 4-5.
[7] *See* ECF 103 at p. 25.
[8] *See* ECF 79 at p. 5.
[9] *See* ECF 79 at p. 6.

Sentencing Memorandum:   3

The plea agreement further contains a joint agreement to recommend a lifetime of supervised release, with certain conditions agreed to.[10] Mr. Emineth further agrees to pay the mandatory $200 special penalty assessment that applies.[11] Mr. Emineth further agrees to pay restitution as required by statute, reserving the right to contest the amount but waiving any appeal of the amount.[12] Mr. Emineth has waived his right to appeal his conviction and sentence (aside from the right to withdraw from the plea), including any fine, term of supervised release, or restitution order.[13]

### Argument Regarding Sentencing

Mr. Emineth is 41 years old and, prior to the instant offenses involving P.E., has no criminal history and no prior arrests. He suffered some significant childhood traumas, including the separation of his parents, effective abandonment and being cut off from all communication with his father from age 13 until 22, and physical abuse at the hands of his mother.[14] He also recalls being in counseling for being sexually abused, but cannot recall any details; his mother does not recall any sexual abuse, but there are some discrepancies between their recollections of his childhood.[15]

---

[10] *See* ECF 79 at p. 28.
[11] *See* ECF 79 at p. 31.
[12] *See* ECF 79 at p. 32.
[13] *See* ECF 79 at pp. 36-37.
[14] *See* ECF 103 at p. 17.
[15] *See* ECF 103 at p. 18.

Sentencing Memorandum:  4

Mr. Emineth met B.M. and married her. At that time, B.M. had a prior child from another relationship—P.E., the victim in this case. Mr. Emineth would later legally adopt P.E., and he and B.M. had two more children together. B.M. had her own problems with substance abuse and law enforcement over the years, ultimately resulting in Mr. Emineth having custody of the children when she was in prison, raising them for many years on his own. After their divorce, Mr. Emineth quit drinking and using other substances.[16]

There is no way to discuss this case without arriving at any number of negative facts. Mr. Emineth's abuse of his daughter is abhorrent and unforgivable. He must live with that for the rest of his life. So must she. What this Court must decide is whether a 20-30 year prison sentence is sufficient to accomplish all relevant sentencing goals. This Court should conclude that a sentence within this range is appropriate and should specifically impose a sentence of 20 years.

Twenty years is a serious sentence. Given his current age and the time he would serve on such a sentence, Mr. Emineth would be at least 60 years old when he is released. A Sentencing Commission study on aging and recidivism showed that arrest rates are significantly lesser for persons 60 and older than any other age category.[17] This

---

[16] *See* ECF 103 at p. 20.

[17] *See* United States Sentencing Commission, "The Effects of Aging on Recidivism Among Federal Offenders," at pp. 10-11 (Dec. 2017), *available at:* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

Sentencing Memorandum: 5

is particularly true when the offender has a criminal history category of I.[18] Persons with no prior criminal history and no arrests, like Mr. Emineth, are significantly less likely to re-offend in the future.[19] Moreover, offenders in this highest age category who do re-offend typically commit less serious, nonviolent offenses.[20] Thus, given his lack of prior criminal history and anticipated age at release if sentenced to 20 years' imprisonment, Mr. Emineth would present a relatively low danger to the community.

Mr. Emineth's offense conduct, while troubling and repugnant, is unfortunately not atypical of production offenses. Most production offenses are committed by a person in a position of trust, with parent being the most common.[21] Additionally, most cases involve facts sufficient to apply the repeat offender enhancement under U.S.S.G. § 4B1.5(b).[22] One key difference is that most production offenders also either possess or distribute other child pornography in addition to what they produced.[23] Here, there

---

[18] *See id.* at p. 25.
[19] *See* United States Sentencing Commission, "The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders," at pp. 7-8 (March 2017), *available at:* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf (offenders with zero criminal history points and no prior law enforcement contacts have a re-arrest rate of only 25.7%, less than half that of Category II offenders and significantly less than all other categories).
[20] *See* "The Effects of Aging on Recidivism Among Federal Offenders" at pp. 22-23.
[21] *See* United States Sentencing Commission, "Federal Sentencing of Child Pornography Production Offenses," at pp. 4, 30 (Oct. 2021), *available at:* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf.
[22] *See id.* at p. 19.
[23] *See id.* at p. 40.

Sentencing Memorandum: 6

is no evidence that Mr. Emineth possessed or distributed any child pornography other than what he produced.

In addition to whatever sentence this Court imposes, Mr. Emineth will receive a separate sentence (hopefully no more than 30 years and concurrent to his federal sentence, though neither is guaranteed) in state court for his actions against P.E.[24] His convictions there will subject him to an indeterminate sentencing scheme under Washington state law, such that he will only be released when the Indeterminate Sentence Review Board (ISRB) deems him fit for release. The ISRB will consider a number of factors in making that decision, including evaluating whether Mr. Emineth has participated in programming and treatment as well as his responsiveness to it, him having a viable release plan, input from the victim, risk assessment scores, and public safety considerations.[25]

The ISRB review process should give this Court sufficient assurances that even if it imposes a 20-year sentence here and even if the state court imposes a minimum sentence along the same lines, Mr. Emineth will nonetheless remain in custody until an independent board evaluates his performance and compliance while in custody, considers his case, and determines it is safe to release him back into the community. A lengthier federal sentence would only serve to prohibit Mr. Emineth's release even if an

---

[24] In contrast, Benton County has agreed to dismiss all state charges against Ms. Hale. *See* ECF 87.
[25] *See* https://www.doc.wa.gov/corrections/isrb/faq.htm#determine-release. *See also* R.C.W. 9.95.420.

Sentencing Memorandum: 7

objective evaluation would show that he is fit for release. Finally, Mr. Emineth will be on lifetime federal supervision and likely a similar term in the state, giving this Court and the state court power to reimprison him if he violates any of the strict conditions of supervision he will be subjected to. A revocation prison sentence could return Mr. Emineth to custody for many years, and any new charges for sexual offenses would likely subject him the being imprisoned for the remainder of his life.

The Bureau of Prisons "recognizes sex offenders as a vulnerable population within a prison setting."[26] Vulnerable there of course means vulnerable to attacks by others. The Bureau of Prisons has a number of policies in place aimed at ensuring their safety and avoiding "the need to place sexual offenders in protective custody."[27] The fact that the Bureau publicly recognizes the vulnerability of sex offenders in their custody and has had policies in place for many years intended to address that vulnerability should inform the Court about the seriousness of a 20-year sentence. Mr. Emineth hopes to avoid conflicts while in prison, but such conflicts may inevitably be forced upon him.

Mr. Emineth intends to request a designation to FCI Englewood, a facility where sex offender treatment is available. He intends to enroll in and complete all available sex offender treatment while in federal custody. His offense of conviction will disqualify

---

[26] Bureau of Prisons, "Custody and Care: Sex Offenders," *available at:* https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp.

[27] Bureau of Prisons, "Program Statement: Sex Offender Programs," at p. 4 (revised 2/15/2023), *available at:* https://www.bop.gov/policy/progstat/5324_010.pdf.

Sentencing Memorandum: 8

him from a number of other beneficial programs, and his lack of an evident substance abuse problem will keep him out of others. Nonetheless, Mr. Emineth intends to make productive use of his time in prison to better himself and prepare himself for re-entry into society. Twenty years is more than sufficient time to allow him to participate in meaningful programming. Again, as noted, the ISRB will only agree to his release if it finds he has participated in a sufficient quantity of programs and meaningfully participated in those programs.

One final point—Mr. Emineth's mother is 61 years old.[28] Many of his supportive family members are similarly older. Even with a 20-year global sentence and even assuming the ISRB agrees to his release at that time, it is likely that many of Mr. Emineth's older family members will be either deceased or infirm. Given the nature of the instant offense and his separation from them while in custody, it is fair to assume Mr. Emineth may not have a positive relationship with any of his children upon his release. Mr. Emineth will thus likely be released at 60+ years old, with minimal family support, dismal job prospects due to the combined effects of his age and now being both a felon and sex offender, and subject to lifetime supervised release and very restrictive conditions. A sentence exceeding 20 years will only further exacerbate his loss of support and make it less likely that he has anything meaningful awaiting him upon release. Therefore, a 20-year sentence would be sufficient.

---

[28] *See* Attachment 1 (letter from Lauren Brooks-Cannon).

Sentencing Memorandum: 9

## CONCLUSION

For the reasons set forth herein and those that will be further argued at sentencing, this Court should sentence Mr. Emineth to 20 years' imprisonment followed by a lifetime of supervised release. The Court should impose the mandatory $200 special assessments, no further special assessments,[29] and no restitution unless a timely request is made.

Dated: December 29, 2023.

By s/ Paul E. Shelton
Paul E. Shelton, 52337
Federal Defenders of Eastern
Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
(509) 248-9118 fax
Paul_Shelton@fd.org

---

[29] Regarding the $5,000 special assessment that could apply under the Justice for Victims of Trafficking Act (*see* ECF 103 at p. 23 ¶ 124), the Court should find Mr. Emineth indigent. He has no meaningful resources or ability to pay currently, he will be imprisoned for the next 20 years at a minimum, and he will have minimal employment prospects when released.

Sentencing Memorandum: 10

**Certificate of Service**

I hereby certify that on December 29, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Laurel J. Holland and David M. Herzog, Assistant United States Attorneys; and

Gary Metro, counsel for Malesa Hale.

s/ Paul E. Shelton<br>
Paul E. Shelton